# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL H. RIMLAND,<br><br>　　　　　　　　　　　Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 06CV2490 JLS (LSP)<br><br>**ORDER: (1) ADOPTING REPORT AND RECOMMENDATION; (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (3) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Presently before the Court are Plaintiff's motion for summary judgment [Doc. No. 10], Defendant's cross-motion for summary judgment [Doc. No. 14], Magistrate Judge Papas' Report and Recommendation ("Report") [Doc. No. 17], Plaintiff's objections [Doc. No. 18], and Defendants' reply to Plaintiff's objections [Doc. No. 21.] For the following reasons, the Court **ADOPTS** Magistrate Judge Papas' Report and Recommendation, **GRANTS** Defendant's motion for summary judgment, and **DENIES** Plaintiff's motion for summary judgment.

## BACKGROUND

On June 13, 2003, Plaintiff filed an application for disability benefits under Title XVI of the Social Security Act, alleging that he became disabled on May 1, 2003 due to polycythemia rubra vera,[1] severe foot pain, dizzy spells, inability to breathe, weakness, fatigue, and sudden sweating. [TR at 16.] Plaintiff was previously employed as a bakery assistant, forklift operator, and warehouse worker. [Id.]

The Commissioner denied Plaintiff's application both initially and upon reconsideration. [Id. at 33-37.] On December 21, 2004, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff, his father, a medical expert, and a vocational expert ("VE") attended the hearing and testified. [Id. at 38-40, 359-378.] Plaintiff's doctors, Dr. Kossman, and Dr. Hirschenbein, submitted medical records showing that Plaintiff had been treated for polycythemia rubra vera, gout, renal disease and that his left kidney had been removed. [Id. at 18-19.] Plaintiff testified that he experienced "attacks" once every 3-4 months, during which his feet swelled and his skin broke. [Id. at 363.] Plaintiff stated that during the attacks he could not walk well. [Id. at 364.]

Plaintiff's father, Dr. Bernard Rimland, testified that Plaintiff was "totally incapacitated," that he lacked energy, and experienced frequent bouts of diarrhea and migraine headaches. [Id. at 367.] Dr. Rimland also stated that Plaintiff's frequent medical appointments would make it difficult for him to gain employment. [Id. at 374.]

A medical expert, Dr. Grant-Anderson ("Dr. Grant"), reviewed the evidence and testified that Plaintiff's diseases did not, singularly or in combination, meet an impairment recognized by the Social Security Administration. [Id. at 370.] Dr. Grant noted that Plaintiff's polycythemia affected his renal disease and caused the kidney stones and infections that led to the removal of Plaintiff's left kidney. However, he also found that his polycythemia was fairly well controlled as a result of his medications. [Id.] Dr. Grant found that Plaintiff suffered "attacks" once a quarter and described Plaintiff's functional capacity:

---

[1] Polycythemia vera is a disorder of the blood-producing cells of the bone marrow, resulting in overproduction of red blood cells. *The Merck Manuals, Online Medical Library,* http://www.merck.com/mmhe.

> [H]e could lift occasional 50 [lbs]. Frequently, 25 pounds, walk or stand up to an hour at a time. Cumulatively up to six hours a day. Sit up to a total of six hours a day. There would be no other significant limitations, Your Honor. Now, during the period of his sickness, he would have extreme limitations. He would be unable to walk more than 15 minutes at a time. Cumulatively, no more than two hours a day and the sitting would be up to three minutes at a time. Cumulatively, up to four hours a day and he would be unable to do any lifting or carrying." [Id.]

Lastly, a VE testified that Plaintiff's past work was "medium in nature, semi-skilled." [Id. at 376.] The VE also stated that Plaintiff would be able to transfer some skills from his work as a bakery assistant to a light or sedentary position. [Id. at 376-77.]

After reviewing the medical records and testimony, the ALJ denied Plaintiff's application for disability benefits. [Id. at 22.] He cited to Dr. Kossman's findings that Plaintiff's renal functions appeared to have stabilized and that the polycythemia was clinically stable while he was on medication. [Id. at 18-19.] The ALJ acknowledged that Dr. Hirschenbein described Plaintiff's gout as "controlled" and that the medical records generally showed only a trace of lower extremity edema. [Id.] The ALJ concluded that the medical evidence also supported Dr. Grant's conclusion that Plaintiff's gout was stable and that he was clinically stable while on medication. [Id.]

In addition, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to "lift/carry 25 pounds frequently, lift/carry 50 pounds occasionally, stand/walk for one hour at a time for a total of six hours per eight-hour day, and sit six hours per eight hour day." [Id. at 19.] The ALJ stated that Plaintiff's RFC would not preclude his past work as a bakery assistant, fork lift operator and warehouse worker. [Id. at 22.] In support, he referenced the VE that had explained Plaintiff's RFC showed he could return to his past relevant work. [Id. at 21.]

Plaintiff filed the present action challenging the ALJ's decision to deny benefits. Plaintiff moved for summary judgment and Defendant filed a cross-motion for summary judgment. [Doc. No. 10, Doc. No. 14.] On November 20, 2007, Magistrate Judge Papas issued the Report advising this Court to deny Plaintiff's motion for summary judgment and to grant Defendant's cross-motion for summary judgment. [Doc. No. 17.] Judge Papas found that substantial evidence supported the ALJ's findings that: (1) Plaintiff's dizziness, breathing problems, and depression are not severe; (2) that Plaintiff has a RFC for medium work; and (3) that Plaintiff can return to his past relevant

1  work. [Report at 22-24.] Plaintiff objects to the Report, primarily arguing that the ALJ's decision
2  was not supported by substantial evidence. [Pl's Obj. at 1-2.]

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews de novo those portions of the Magistrate's Report to which either side objects. Thomas v. Arn, 474 U.S. 140, 149 (1985); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). The Court has no obligation to review the Magistrate's conclusions if neither party objects to those conclusions. Schmidt v. Johnstone, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003).

The ALJ's decision to deny benefits will only be disturbed if it is not based on "substantial evidence or it is based on legal error." Magallanes v. Brown, 881 F.2d 747, 750 (9th Cir. 1989). The "substantial evidence" inquiry is whether the record, read as a whole, contains such evidence as would allow a reasonable mind to accept the ALJ's conclusions. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982); see also Lewis v Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (stating "substantial evidence is more than a mere scintilla, but may be less than a preponderance"). If the evidence supports more than one interpretation, the Court must affirm the one selected by the ALJ. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). When reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence. Sample, 694 F.2d at 642.

The ALJ uses a five step analysis to evaluate disability claims. 20 C.F.R. § 404.1520.

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity . . . If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments . . . If so, the ALJ proceeds to step three and considers whether the medical impairment or combinations of impairments meets or equals an impairment listed under 20 C.F.R. pt. 404, subcpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.
>
> The claimant carries the initial burden of proving a disability in steps one through four of the analysis. See Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). However, if a claimant establishes an inability to continue her past work, the

> burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. See id.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

### I. The Court Adopts the Magistrate's Report and Finds that Substantial Evidence Supports the ALJ's Findings

As mentioned, the Plaintiff carries the burden of showing an inability to perform his past relevant work. Id. Here, the record adequately supports the ALJ's finding that Plaintiff failed to meet that burden. Multiple doctors found that Plaintiff was clinically stable while on medication and Plaintiff himself frequently claimed he felt generally well. [Id. at 18-19, 327-330.] In addition, the testimony of Dr. Grant showed that Plaintiff retains a RFC which allows him to "lift/carry 25 pounds frequently, lift/carry 50 pounds occasionally, stand/walk for one hour at a time for a total of six hours per eight-hour day, and sit six hours per eight hour day." [Id. at 22.] [2]

These limitations match the "medium work" exertion definition the Department of Labor uses to classify jobs in the national economy. See 20 C.F.R. § 404.1567. This RFC also matches Plaintiff's own description of his past work. [TR at 74-76.] Further, the VE testified that Plaintiff's past relevant work was "medium in nature, semi-skilled." [Id. at 376.]

The ALJ stated that he reached his conclusion that Plaintiff could return to his past relevant work "after carefully read[ing] and consider[ing] the entire record, including all documents identified in the record as exhibits, the testimony at the hearing, and the arguments presented, regardless of whether it is cited in this decision." [TR at 16.] Magistrate Judge Papas found that substantial evidence supported the ALJ's findings and this Court agrees.

---

[2] Dr. Grant noted that when Plaintiff was having "attacks," his RFC was more limited. However, Dr. Grant and Plaintiff acknowledged that the "attacks" or "periods of sickness" only occurred approximately once a quarter. [TR at 372.]

1  **II.     The Court Finds Plaintiff's Multiple Objections Unpersuasive**

2      **A.     VE's Testimony**

3      In the decision, the ALJ stated: "the [VE] testified that based upon the claimant's residual 4 functional capacity, the claimant could return to his past relevant work." [Pl's Obj. at 2.] Plaintiff 5 contends that the VE never stated that he could return to his past relevant work and that the ALJ 6 improperly relied on such a statement. [Id.]

7      The Court finds that even if the ALJ misquoted the VE, the mistake amounts to harmless 8 error. "A decision of the ALJ will not be reversed for errors that are harmless." Burch, 400 F.3d 9 at 679; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); Batson v. Comm'r of Soc. Sec. 10 Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that an ALJ's error is harmless when it 11 "does not negate the validity of the ALJ's ultimate conclusion"). Here, there is other reliable 12 evidence in the record supporting the ALJ's findings. The ALJ stated that he reached his 13 conclusions, "after careful consideration of the entire record." [TR at 21.] That record contained 14 the substantial evidence discussed above, including a medical expert's testimony, Plaintiff's own 15 testimony, Plaintiff's medical records, and the VE's testimony that Plaintiff's past work could be 16 classified as "medium in nature." [Id. at 18-21.] [3]

17

18     **B.     Plaintiff's Past Relevant Work**

19     Plaintiff argues that the ALJ could not realistically assess whether a person with his 20 limitations could return to his past work because he did not adequately assess the physical and 21 mental requirements of that work. [Pl's Obj. at 2.] The regulations require the ALJ to make a 22 finding of fact as to the physical and mental demands of the claimant's past relevant work as 23 actually or generally performed. See 20 C.F.R. § 416.920(e); *Social Security Ruling* 82-62, 1982 24 WL 31386 (SSA) (hereinafter SSR 82-62). The ALJ may use the services of a VE to do this. See

25

---

26    [3] Plaintiff also argues that the ALJ should have posed a hypothetical question to the VE, to determine whether a person with Plaintiff's RFC could return to his past relevant work. [Id.] 27 However, case law suggests that in making this determination, at step four, the ALJ is not required to ask a VE a hypothetical question. Matthews, 10 F.3d at 681; see also Crane v Shalala, 76 F.3d 251, 28 255 (9th Cir. 1996). Therefore, the ALJ did not err by failing to pose a hypothetical question to the VE.

1  20 C.F.R. § 404.1560(b)(2); *Social Security Ruling* 81-61, 1982 WL 31387 (SSA) (hereinafter
2  SSA 81-61).
3       In the present action, the ALJ used the services of a VE to develop the physical
4  requirements of the Plaintiff's past work. [TR at 376.] The VE was present for the entirety of the
5  oral testimony. She also stated that she had reviewed the evidence in the record, which included
6  Plaintiff's description of his past work. [Id. at 74-76, 361.] Ultimately, the VE concluded that
7  Plaintiff's past relevant work was "medium in nature, semi-skilled." [Id. at 376.] The Dictionary
8  of Occupational titles also lists the occupations of bakery assistant, forklift operator, and
9  warehouse worker at the medium exertion level. See DOT No. 313.684-010, 921. 683-050, and
10 922.687-058. Thus, the Court finds that the ALJ adequately assessed the requirements of
11 Plaintiff's past work.
12
13     **C.    Dr. Grant's Testimony**
14      Plaintiff argues that the ALJ failed to consider Dr. Grant's opinion that when Plaintiff was
15 ill, his RFC only allowed him to walk up to 15 minutes at a time, for no more than two hours a
16 day, and that his "attacks" could occur as often as once every 3-4 months. [Pl's Obj. at 2.]
17 However, the ALJ noted that he considered all of the testimony at the hearing and the arguments
18 presented "regardless of whether it [was] cited in [the] decision." [TR at 21.] Moreover, in his
19 decision, the ALJ cites to Dr. Grant's findings on multiple occasions and thereby reveals that he
20 fully considered the entirety of his testimony. Specifically, the ALJ noted Dr. Grant's finding that
21 when Plaintiff was not having problems, he could occasionally lift 50 pounds, frequently lift 25
22 pounds, sit up for six hours a day, and walk or stand up for an hour at a time–cumulatively up to
23 six hours a day. [Id.] Finally, as discussed, the ALJ's ultimate decision was wholly supported by
24 other reliable evidence, including Dr. Grant's other findings.
25
26
27
28

### D.  Frequent Medical Appointments

Plaintiff argues that the ALJ failed to consider the impact of his frequent medical appointments on his ability to return to work. [Pl's Obj. at 2-3.] The Ninth Circuit has indicated that the ALJ need not discuss all evidence presented to him or her. Rather, the ALJ must explain why "significant probative evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citations omitted). Here, this evidence, which the ALJ allegedly ignored, was neither significant nor probative.

### E.  Dr. Rimland

The Plaintiff alleges that the Magistrate Judge did not consider his argument that the ALJ's rejection of Dr. Rimland's testimony was legal error. [Obj. at 1.] However, this Court finds that the ALJ did not reject Dr. Rimland's testimony. Instead, the record shows that the ALJ considered Dr. Rimland's testimony, but found that: (1) Dr. Rimland was not medically trained to make the observations he made; (2) that he could not be considered a disinterested third party witness because he was Plaintiff's father; and (3) that his report was "not consistent with the preponderance of the opinions and observations by medical doctors in this case." [TR at 20.] The ALJ need not accept all allegations as true but must weigh all evidence in the record and resolve any conflicts or ambiguities. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003); Vincent, 739 F.2d at 681. Here, the ALJ did not err by giving more deference to other reliable evidence.

**CONCLUSION**

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Papas' Report and Recommendation; **GRANTS** Defendant's motion for summary judgment; and **DENIES** Plaintiff's motion for summary judgment.

DATED:  May 9, 2008

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge